UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| MARIE MEAD, | ) | 3:06-cv-00626-HDM-VPC |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| BANK OF AMERICA, | ) | |
| Defendant. | ) | |

Before the court is defendant Bank of America's motion for summary judgment (#16). Plaintiff, who has multiple sclerosis, filed a complaint (#1) under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, claiming discrimination by the defendant, her former employer, on the basis of her medical condition. Plaintiff opposed the motion (#20), and the defendant replied (#23). In support of its motion, the defendant argues that (1) Mead is not disabled within the meaning of the ADA; (2) even if she is disabled, the bank made reasonable accommodations for her; and (3) that the plaintiff did not suffer an adverse employment action because of her disability. The court will examine each of these claims in turn.

1

**I. Summary Judgment Standard**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); Martinez v. City of Los Angeles, 141 F.3d 1373, 1378 (9th Cir. 1998). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *Lynn v. Sheet Metal Workers Int'l Ass'n*, 804 F.2d 1472, 1483 (9th Cir. 1986); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

Once the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, the respondent must show by specific facts the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Bd. v. Boeing Co.*, 585

2

F.2d 946, 952 (9th Cir. 1978); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993) ("[I]n the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free . . . to grant summary judgment."). Moreover, "[i]f the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial." *Blue Ridge Insurance Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998) (citing *Cal. Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)). Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

**II. Discrimination under the ADA**

The ADA provides that it is unlawful for a covered employer to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a). A plaintiff may qualify for relief under the ADA if she can show that: "(1) she is a disabled person within the meaning of the statute; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job she holds or seeks; and (3) that she suffered an adverse employment

3

action because of her disability." *Braunling v. Countrywide Home Loans Inc.*, 220 F.3d 1154, 1156 (9th Cir. 2000).

**A. Disability**

The ADA provides that an employee is disabled if her physical or mental impairment substantially limits one or more of her major life activities. *See* 42 U.S.C. § 12102(2)(A). A plaintiff must therefore satisfy three elements in a disability analysis: (1) she must have a physical or mental impairment; (2) the impairment must limit one or more of her major life activities; and (3) the limitation must be substantial. *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 194-95 (2002). The fact that a plaintiff suffers from a particular named condition is not sufficient in itself to render her eligible for relief under the ADA. *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999). It is the effect of the condition on that person's life that matters. *Id*. A fourth consideration concerns whether the employer believed the employee had a disability and discriminated against her on the basis of that belief: "[a]n employer runs afoul of the ADA when it makes an employment decision based on a physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 490 (1999).

(1) Physical Impairment

As the defendant concedes, the plaintiff's condition clearly satisfies the first prong of the disability analysis which requires that she have a physical or mental impairment. A diagnosis of MS

4

has been the basis for disability findings in many ADA cases. *See, e.g., Braunling*, 220 F.3d at 1157 (plaintiff suffering from some of the "debilitating consequences of [MS] such as poor ambulation ability and extreme fatigue"). Plaintiff has provided sufficient evidence of her diagnosis, as well as of some of its unfortunate consequences.

### (2) Major Life Activities

With respect to the second prong of the disability analysis, plaintiff clearly identifies two major life activities that have been impaired because of her disability: seeing and speaking. (Pl. Opp'n at 13). It is undisputed that these activities fall within the type of major life activities contemplated under the statute. They are among the major life activities specifically enumerated in the regulations implementing the ADA, 29 C.F.R. § 1630.2(i)("Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working"); and are also included in the regulations implementing the Rehabilitation Act, 42 U.S.C. § 12201(a), to which courts may refer when considering claims under the ADA. *See Bragdon v. Abbott*, 524 U.S. 624, 638-39 (1998). Plaintiff has therefore satisfied the second prong of the disability analysis with respect to her impaired vision and speech.

Plaintiff cites to several other health issues related to her MS, including pain, emotional sensitivity, and claustrophobia. (Pl. Opp'n at 2). She notes that these health issues have forced her to modify her behavior, including refraining from driving at night or over long distances, spending time in hot weather, and

5

using the oven. (Id.). With respect to these affected activities, the court finds that they do not satisfy the requirements for a "major life activity" addressed in the second prong of the disability analysis, and the court will therefore only examine the limitations plaintiff has experienced with her sight and speech.[1]

### (3) Substantial Limitation

There is some dispute between the parties as to whether the plaintiff's sight and speech is substantially impaired under the third prong of the disability analysis. The Ninth Circuit has held that for a monocular individual to demonstrate a substantial limitation of sight, "the impairment must prevent or severely restrict use of [the plaintiff's] eyesight compared with how unimpaired individuals normally use their eyesight in daily life." *E.E.O.C. v. United Parcel Service, Inc.*, 306 F.3d 794, 797 (9th Cir. 2002). The EEOC's regulations that implement the ADA are also instructive. *See Toyota*, 534 U.S. at 195 (noting that the definitions provided by the EEOC's regulations are useful, but their persuasive authority is not absolute). Under the EEOC's definition, "substantially limit[ed]" means "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life

---

[1] While the plaintiff has made clear that her ability to drive has been significantly impaired by her condition, she also concedes in her opposition brief that driving is not a major life activity for the purpose of the disability analysis. (Pl. Opp'n at 15). The court therefore will not address the merits of the legal argument that driving is a major life activity.

6

1  activity." 29 CFR § 1630.2(j). Additional factors enumerated in
2  the EEOC regulations that may also be considered include: "(i)
3  [t]he nature and severity of the impairment; (ii) [t]he duration or
4  expected duration of the impairment; and (iii) [t]he permanent or
5  long term impact, or expected permanent or long term impact of or
6  resulting from the impairment." *Id.*

7      Plaintiff claims that she experienced several episodes in
8  which her vision was impaired as a result of MS. She cites to two
9  occasions over a period of two years in which she felt compelled to
10 pull over while driving because of issues related to her eyesight.
11 (Pl. Opp'n at 16). She recounts periods of double vision, both
12 while driving and at home. (Id. at 16-17). Plaintiff also points
13 out that she has been diagnosed with anoptic neuritis, a condition
14 that affects her peripheral vision. (Id. at 16). Finally, she
15 notes that she had difficulty "seeing her computer," although this
16 sight problem was apparently remedied by the accommodations made by
17 the defendant, including the installation of a new computer screen.
18 (Id.).

19     While the court is mindful of the progressive and often
20 erratic nature of plaintiff's condition, plaintiff's description of
21 the isolated difficulties she experienced with her eyesight does
22 not meet the "substantial limitation" standard under the ADA. The
23 few occasions in which her eyesight impaired her driving were
24 neither sustained nor of the type of severity that the statute
25 contemplates. Similarly, plaintiff points to no circumstances in
26 which her diminished peripheral vision substantially limited her
27 ability to function in a way someone without her condition would.
28 It is evident from the record that plaintiff is still able to lead

an active life, including traveling abroad, working, reading, and exercising regularly. (Def. Mot'n for Summ. J., Ex. B (Marie Mead Dep. at 16, 38-39)). Plaintiff also continues to drive, though apparently not at night. (Id. (Marie Mead Dep. at 59)). Outside the few occasions in which she experienced double or blurred vision, it appears that the plaintiff's visual acuity has remained intact, and has not limited her ability to function as others do without such problems. Nor has plaintiff demonstrated that the pain, claustrophobia, or emotional sensitivity have presented a substantial limitation of her sight. For these reasons, the plaintiff has failed to establish that a triable issue of fact exists as to whether her vision problems substantially limit her life activities.

Plaintiff also claims that her speech has been impaired by her condition. Specifically, she indicates that she "can no longer speak confidently in her native language and becomes embarrassed about her slow and intentional speech." (Pl. Opp'n at 12). This claim clearly falls short of the "substantial limitation" required under the third prong of the disability analysis. While plaintiff's facility with speech may indeed be affected by her condition and by the drugs she must take to manage it, it is self-evident from her deposition alone that plaintiff is not substantially limited in her ability to use speech to communicate. While she may have suffered a diminished confidence in her ability to converse in her native language of Armenian, this is insufficient to establish a triable issue of fact that she has a "substantial limitation" as required for protection under ADA.

8

(4) Discrimination based on belief of a disability

The final question under the disability analysis is whether the defendant believed plaintiff had a disability, and discriminated on the basis of that belief. The inquiry stems from the statute itself, which provides that having a disability includes "being regarded as having" a physical impairment that substantially limits one of the major life activities. 42 U.S.C. 12102(2)(C). Here, plaintiff claims that the comment of her supervisor Steve Russell that she should "take disability" was an indication that the bank believed she was disabled. This reference stated alone is insufficient to establish a triable issue that that the bank believed plaintiff was disabled as that term is defined under the statute. Thus, the Ninth Circuit has held that "a person cannot be *regarded* as disabled unless the deficiency that the person is regarded as having is a *disability*" under the ADA. *United Parcel Service*, 306 F.3d at 801. Instead, Mr. Russell's use of the term appears to be consistent with a more generalized meaning of the term that she should take time off to care for herself. *See id*. at 805 ("Casual references to disability . . . do not support a finding" that an employer regards an employee as disabled).

B. **Essential Functions**

Even if the court had found that an issue of material fact exists that could establish that plaintiff was disabled under the ADA, her claim would fail under the second element of the Ninth Circuit's test, that she be qualified, with or without reasonable accommodation, to perform the essential functions of the job she

9

holds or seeks. *Braunling*, 220 F.3d at 1156.  The term "essential functions" refers to the "fundamental job duties of the employment position the individual with a disability holds or desires.  The term . . . does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1).  The court must ask whether a plaintiff "can perform the job's essential functions without reasonable accommodation, and then, if he cannot, whether he can do so with reasonable accommodation." *Dark v. Curry County*, 451 F.3d 1078, 1086 (9th Cir. 2006).

Plaintiff's title at Bank of America was Client Manager.  The parties concur on the essential functions of a Client Manager.  According to the plaintiff, "[a] Client Manager is responsible for the relationship building of high value customer [sic].  Essential functions of a Client Manager include: calling five (5) customers daily; visiting customers in person; obtaining new clients; resolving customer problems; being an advocate for the customers." (Pl. Opp'n at 1-2).  Plaintiff points to her ten year record of employment with the bank without receiving any warning, reprimands, or poor evaluations, as evidence that she continued to perform her job's essential functions.  (Id. at 19).  She indicates that it was only upon the arrival of Mr. Russell, who became her supervisor in 2005, that she began to receive written reprimands and poor evaluations.  (Id.).  In particular, she notes that Mr. Russell was unsympathetic to her health condition and rejected her explanations for why it was hindering her job performance.  (Id.).

The defendant points out, however, that the plaintiff consistently performed poorly at her job's essential functions according to the standards the bank uses to evaluate its employees.

(Def. Mot'n for Summ. J. at 10). Specifically, the defendant argues that plaintiff's "Client Delight" score, which measured the satisfaction of the plaintiff's clients and which was determined through a quarterly client survey conducted by a third party, was consistently low through much of 2004 and 2005. (Id. at 10-12). Furthermore, the bank received numerous complaints concerning plaintiff's performance from her clients, as well as requests to be transferred to a different client manager. (Id.). Plaintiff also missed multiple meetings and appointments both with supervisors at the bank and with clients. (Id. at 10-11). The defendant cites to several occasions in which the bank attempted to assist plaintiff in improving her performance, without success. (Id. at 10-13). Finally, the bank indicates that in one instance in the midst of her declining performance, the plaintiff actually misrepresented her low production figures to the bank. (Id. at 11-12).

Plaintiff's interaction with existing clients and acquisition of additional clients were core elements of her work, and by the bank's metrics her performance in these areas was deficient. Plaintiff's apparent effort to inflate her performance figures suggests that she was also aware of their inadequacy. Furthermore, the record reflects that not only did the plaintiff fail to perform her job's essential functions satisfactorily, but she failed even with the accommodations the bank made to her requests. Specifically, the bank responded to two requests she made to mitigate the impact of her job's duties on her health. First, it reduced the distances she was required to drive to meet with clients when she stated that long distances bothered her. (Id. at 14-16). Second, the bank provided her with a larger computer

monitor when she complained of difficulty seeing the screen, as well as a "full ergonomic evaluation and reconfiguration" of her office. (Def. Reply at 6). Even with these accommodations, plaintiff's performance did not improve. Plaintiff's claim therefore also fails under the second prong of the discrimination analysis under the ADA that she be able to perform the essential functions of her job to be entitled to protection.

### C. Adverse Employment Action

The final requirement for relief under the ADA is that to recover, a plaintiff must have been the object of an adverse employment action. *Braunling*, 220 F.3d at 1156. Additionally, the disability must have been a "motivating factor" in the adverse employment action. *Head v. Glacier Northwest Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005)("the ADA outlaws adverse employment decisions motivated, even in part, by animus based on a plaintiff's disability or request for an accommodation—a motivating factor standard"). The Ninth Circuit has adopted a broad view of what constitutes an adverse employment action in the Title VII context to include any "adverse treatment that is reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1237 (9th Cir. 2000). This definition may encompass negative performance evaluations if they are clearly undeserved or a large departure from prior reviews. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)("Transfers of job duties and undeserved performance ratings, if proven, would constitute 'adverse employment decisions'"). It is clear that a plaintiff need not be terminated to establish an adverse employment

12

action.  *See, e.g.*, *Coons v. Secretary of U.S. Dept. Of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004)(finding that the demotion of an IRS employee was an adverse employment action under the ADA).

Here, plaintiff was not terminated by the defendant.  She voluntarily resigned, allegedly in anticipation of being fired. (Pl. Opp'n at 7).  She therefore claims that the adverse employment actions against her consisted of "baseless written reprimands and a sub-par and unmerited evaluation.  Plaintiff was singled out by Mr. Russell, placed on a performance improvement plan and treated less favorably than other employees."  (Pl. Opp'n at 20). While these allegations standing alone may be sufficient to fall within the broad definition of an adverse employment action articulated by the Ninth Circuit in the context of a Title VII action, the record clearly reflects that the defendant's reprimands and poor evaluations were motivated by the plaintiff's declining performance, and not by any animus based on the condition of her health.  The defendant has explained its system for determining when an employee's performance demands improvement through special attention from the bank.  Plaintiff's "Client Delight" score was below standard, and the bank received multiple complaints from clients about her job performance.  The bank's actions the plaintiff points to as evidence of its discrimination are consistent with the actions any employer might take to promote better performance from an employee who is demonstrating serious difficulties with her job duties.

Furthermore, plaintiff has failed to show that these are actions of an employer seeking to pressure an employee to quit because of her disability by creating uncomfortable working

13

conditions.  Plaintiff makes the statement that she "had deposits which were rightfully hers taken away and then constructively terminated."  (Id.).  This is plaintiff's only mention of a constructive termination, and the record does not create a triable issue of fact as to this claim.  To make out a case of constructive discharge, an employee must demonstrate that a working environment is "so intolerable and discriminatory as to justify a reasonable employee's decision [to leave]."  *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987).  The plaintiff has made no such showing here.  Instead, the bank made considerable efforts to work with the plaintiff to improve her lagging performance. It did not demote her, reduce her pay, or otherwise discipline her for her conduct, but instead accommodated her requests for shorter driving distances and a more suitable computer screen.  Plaintiff has presented insufficient evidence to demonstrate that there is a triable issue of fact that her working conditions were so intolerable that a reasonable person in her position would have felt compelled to leave.

Moreover, plaintiff indicates that her final decision to leave stemmed from her meeting with her supervisor, Mr. Russell, whose "mannerisms coupled with [his] carrying certain forms indicated to Plaintiff that [he] intended to fire Plaintiff.  Plaintiff, instead of Mr. Russell firing her, resigned."  (Pl. Opp'n at 7). Defendant indicates, however, that this meeting was in fact yet another attempt by the bank to provide the plaintiff with an opportunity to improve her performance through a "Structured Coaching."  (Def. Reply at 12).  The record reflects that at the time of the meeting, the plaintiff had already secured and accepted

14

a job at a different bank, a fact that clearly belies her claim of constructive discharge.

## III. Conclusion

For these reasons, the court finds that there is no issue of material fact with respect to plaintiff's claim under the ADA, and the defendant is entitled to summary judgment as a matter of law. Defendant's motion for summary judgment is therefore granted.

**IT IS SO ORDERED.**

DATED: This 14th day of March, 2008.

_____
UNITED STATES DISTRICT JUDGE